All right, our second case today is number 20-12547, Nancy Gargula v. Margaret Smith. And Mr. Leggett, we'll start with you. Good morning, Your Honours. Jamie Leggett of Fast Jam on LLP on behalf of the Appellant Investment Trustee, if it may please the Court. Your Honours, we are here today because the U.S. trustee billed the Mosaic Estate for excessive U.S. trustee fees based upon a statutory amendment that was enacted more than a year after the commencement of these Chapter 11 cases. This appeal, before Your Honours, challenges the application of this fee increase to the Mosaic Estates on three fronts. First, because Congress did not expressly provide for retroactive application, as it has done with this same statute before this amendment and after, the amendment should not apply to pending cases like Mosaic. Second, Your Honours, if the Third, Your Honours, the application of the amendment to the Mosaic cases violates due process because the case was already pending and the Court had already confirmed the plan which vested the party's interest prior to the enactment of the amendment. Your Honours, turning to the first argument that this amendment simply does not apply to pending cases, this amendment does not expressly prescribe that it applies to pending cases. Your Honours, there is a presumption that statutes apply prospectively only unless retroactive effect is expressly prescribed. The statute here, the amendment here, lacks clear congressional intent. There is no language stating that it applies to pending cases. In other words, it does not say this statute applies to pending cases. And you can compare this to instances of showing that Congress knows how to provide for retroactivity to apply these statutes to pending cases. Your Honours, is there a difference though between, or should there be a difference between statutes which regulate primary conduct and statutes which just impose an amount of money to be paid for a government service? Your Honours, we do not believe that is the relevant distinction because the relevant conduct here is the commencement of case. Under Section 1930A, which provides for these U.S. trustee fees, it says that it's not the disbursements that are the trigger for liability, rather the trigger for liability is the commencement of the case. This court has to examine the entire statute rather than simply subsection A6 containing the word disbursements in isolation. Section 1930A provides that the commencement of the case. What text are you, when you're saying that, what text are you pointing to? I've got the statute up. What are you pointing to? So, I believe you could call it the chapeau. Under 1930A, before it lists the six different items, the filing fees, and then the A6, A7 being the quarterly fees for U.S. trustee and bankruptcy administrative districts, in that very first line above that list, it says that upon the commencement of the case, the following fees, filing fees and quarterly fees, shall be owing. And so, that is what fixes the liability as of the petition date, as of the commencement of the case. To state it otherwise, but for the filing of a case, the commencement of a case, there would be no U.S. trustee fees owing. We would refer the court to the case of USA Sales from the Central District of California, provided a supplemental authority to the court. And I quote, focusing on disbursements as the relevant conduct would render the phrase commencing a case in 28 U.S.C. Section 1930A superfluous, end quote. And your honors, this is not surprising, because in the bankruptcy context, the commencement of the cases, that is a very important date, because that is the date on which various rights and obligations of the debtors and other parties and interests are fixed, including the automatic stay, the creation of the bankruptcy estate, the conversion in Chapter 11 of a debtor to a debtor in possession, and here, the U.S. trustee fees that shall be due and owing during the pendency of the case. To state it, to give another way of analyzing this, once you commence the case, you have to keep paying those quarterly fees in each quarter, even in quarters in which there are no disbursements. If disbursements was the trigger for liability, that would not be the case. But that is not how this statute is written, provides that the debtor is liable starting as of the commencement of the case and going forward in each quarter, including quarters with absolutely no disbursements. And to refer the court again to the USA Sales decision, and I quote, on the date that the Chapter 11 debtor commences its case, the debtor's expectations with respect to the quarterly fee liability are fixed, which, crucially, at the bankruptcy context, enables the debtor to make informed decisions about how to proceed in this Chapter 11 case. Counsel, I understand the commencement of the case language that you talk about, and clearly, it is a necessary precondition if the case is not commenced. But I don't see how that language gets you much farther than that. And what makes me doubt your position is the language of the that we require from Congress. It says that these amendments shall apply, quote, for disbursements made in any calendar quarter that begins on or after the date of enactment of this act. It seems to me that is a clear statement. And it's bolstered by the fact, by the language of 1938-6, capital A after the amendments, with it says, in each quarter, for in each case, it says, for each quarter, the fee shall be due. And that is now the increased fee. How do you respond to that clear language? Certainly, Your Honor. I have two points. The first point is that the Supreme Court in Landgraf held that the effective date of a statute does not determine this issue. The second point is that you can compare this amendment to times where Congress actually did clearly express its intent for retroactive application. So, in the next section of the amendment, it changes to Chapter 12 of the Bankruptcy Code. And that language expressly provided that it would apply to certain pending cases. And this Court can look to the inclusion of that clear intent to retroactive application in the next section, compare that to the omission in the amendment to determine that Congress's intent was not to apply to pending cases. This Court can also look to the last time this very same statute got amended in the face of substantial challenges, which was back in 1997. And while at that time when certain cases had found that the fee increase then was impermissible, Congress changed the statute, revised the statute to provide that it applied to cases, quote, including without limitation any cases pending as of that date. This Court can also look to the later amendment to this very amendment, which Congress enacted this year, which expressly prescribed that the changes this time to lower the U.S. trustee fees shall apply to pending cases. Your Honours can compare those statements of clear congressional intent and compare them to the absence of such clear congressional intent, such express prescription in the amendment. If Your Honours have no further questions about this issue, I'd like to turn to the non-uniformity point. Thank you, Your Honours. Your Honours, assuming that this amendment applies, it is still impermissibly non-uniform, both facially and as applied. Debtors in U.S. trustee districts have to pay more here. It was roughly $310,000 more that these debtors and creditors had to suffer in excess fees. Your Honours, this is non-uniform because, yes, Your Honour? If we hold that Congress did make a clear statement, then we do not reach the issue you're addressing now, the retroactive consequences. Is that not correct? If you find that Congress did not provide for it to apply to pending cases, then you do not get to the issue of non-uniformity. You do not have to Same thing applies to your due process argument. Exactly. Exactly, Your Honours. Section 1930A7, which applies to bankruptcy administrator debtors, it has the word may. The word may is permissive. Your Honours can compare the word may showing up in subsection A7 to the word shall that shows up in subsection A6 for U.S. trustee debtors, as well as the word shall that shows up later in subsection A7, which expects what happens to the fees if the fees are, in fact, increased to bankruptcy administrator districts. This shows that Congress's intent was for the word may to be permissive. This court can look to the persuasive authority of the judicial conference, which likewise found that this amendment does not apply to pending cases. And here, this non-uniformity has no excuse for it. The task is that there needs to be a geographically isolated problem, but this amendment regulates Chapter 11 debtors as a class, and those debtors exist across both bankruptcy administrator and U.S. trustee districts while providing differential rates. Counselor, why, why, why cannot you're on the uniformity issue now? Why cannot the class of debtors, which the Supreme Court and this court also have said is what the bankruptcy uniformity clause is, or a legislature can address a class of debtors. Why cannot the debtors in United States trustee districts be an appropriate class of debtors? Your honors, we challenged that because of the fact that Congress cannot create a non-uniformity issue in the, in the first instance, via creating a, uh, two systems that are dichotomous as found by the ninth circuit in St. Angelo and use that original problem, that original non-uniformity issue to permit further non-uniformities. I do not understand you in this case to be challenging the constitutionality of the dual system. It hasn't challenged it. We don't ordinarily address a constitutional issue with no briefing. Why should we not simply assume that the two systems are constitutional and then you have a class of debtors? Your honors, we have briefed this issue of the dichotomy between the two systems, uh, both to the bankruptcy court and to this court. I would refer the court to our motion at page 7, our reply at pages 6, 16, uh, 2 and 12, our opposition brief at page 33, our opening brief, I apologize, at page 23, our reply brief at pages 27 to 30. Our remedy that we are seeking is a remedy that this court can grant, which is to ameliorate the non-uniformity to the best extent possible for the benefit of the parties before this court, which is monetary damages in the form of the excess fees that we have paid. We are not seeking the remedy of having this court invalidate the two systems, but we have argued repeatedly both to the bankruptcy court and to this court that the dichotomy between the two systems undermines any argument that Congress can thereafter, uh, justify the resulting dichotomy in the fees as applied and facially between U.S. trustee and bankruptcy administrator districts. Can I ask you, let me ask you just address one question because I'm pretty sure that this is going to come up in the next argument. So the, um, your opposing counsel argues in the brief that if there is any disuniformity here, it's disuniformity in just the administration of the statute that would otherwise be uniform and not sort of disuniformity in the substantive rights that anybody has. Um, what do you say about that? This is, your honors, this is not a procedural statute. This is a statute that affects the substantive rights of parties in bankruptcy cases. It received from a bankruptcy case. This is not similar to a BAP. This is not similar to bankruptcy local rules. Uh, you know, a BAP is, uh, the parties opt into that voluntarily for the local rules. The court has the inherent authority to promulgate the rules of acting the parties before it. So long as those rules are procedural here, this is a substantive law that fixes liabilities and obligations as of the commencement of the case. This is not a procedural. Okay, Mr. Leggett, thank you so much. You've saved all of your time for rebuttal. Thank you, your honors. Mr. Sandberg. Good morning and may it please the court. Jeff Sandberg for the United States trustee. I'd like to briefly begin on what I take to be opposing counsel's primary argument, which is on the retroactivity side of the case. The argument that the chapeau of 1930-A, which refers to parties commencing a case, means that the quarterly fee structure must be fixed in time forevermore for that case once the case is filed. That's not a theory that they've briefed it all in this case, so it's been forfeited. They did call this to the USA sales decision to the court's attention. There are a lot of problems with this argument textually. If you look at 1930-A-6, the chapeau refers to parties commencing a case paying to the clerk of the district court or the bankruptcy court certain filing fees that are set out in A-1, 2, 3, 4, and 5. A-6, although it sort of appears under the heading of A, is grammatically independent of A. It talks about a different fee that is paid at a different time to a different entity. It's a fee paid to the United States trustee rather than a fee paid to the clerk of the bankruptcy court. The only appellate court I'm aware of that's ever addressed it was the 8th Circuit in a case called In re Primes, 867 F. 2nd 478. The relevant discussion appears at pages 483 to 84. The 8th Circuit specifically rejected this argument that the court of fees you have to pay are fixed in time forevermore because in addressing a different fee, the chapeau of A refers to parties commencing a case. The argument also just doesn't hold together logically because as my opposing colleague pointed out, Congress has, you know, we all agree that in the most recent act that Congress enacted, which actually lowered bankruptcy fees going forward, Congress, you know, obviously wanted that to apply to pending cases. So if Congress was clear in the 2020 Act that it wanted to apply to pending cases, that obviously means that the commencing a case language at the top of doesn't, you know, there's no inherent conflict between that and and and a six. So and our submission is, as I think Judge Anderson asked, is that Congress was sufficiently clear in the 2017 amendment here that a quarterly fee, um, the court of fees will increase for disbursements starting in per quarter starting in 2018 based on disbursements occurring in 2018 and thereafter. And you read that together. Mr Sandberg, what what is your response to the fact that in some of the 2017 amendments, Congress put in express language for immediate effect? Congress has done it different ways each time that it's it's tinkered with the quarterly fees. And I'm not worried. I'm not worried about what happened in the past. I'm talking about the 2017 amendments, and there's language in some of those amendments requiring immediate effect, whereas the statute that we're dealing with here doesn't contain any express language one way or the other aside from the effective date, right? Okay, I follow you now. Yes, there's a there's a different amendment in the 2017 amendments to provisions of Chapter 12 of the bankruptcy code in a different part of the statute, and this has been raised in numerous other cases. The Fourth and Fifth Attempt to analogize to that section. There's really two problems with looking to that as an analogy. The first one is Congress was expressed in the Chapter 12 amendments because it wanted to distinguish among classes of pending cases. It wanted to treat pending cases that had confirmed plans differently than pending cases that didn't yet have confirmed plans. So it was incumbent on Congress to actually speak up and draw that distinction. Here, Congress hasn't intended to exempt any pending cases from the change that it's implementing. So there's no need for Congress to say, okay, no pending cases with confirmed plans are exempt. The other issue is that the Supreme Court has told us in Martin vs. Haydix and other cases that the inference from Congress speaking expressly about effective dates in one section of the statute and not in another. The inference is really quite weak when you're talking about wholly different subject matters. Recognizing the realities of legislative drafting here, I mean, the amendments to Chapter 12, you're thinking about a and so the Fifth Circuit for this reason, you know, dropped a footnote to dismiss this argument and say, we don't think it's persuasive to look at the Chapter 12 amendments for guidance on what Congress intended in Chapter 11. More persuasive is that Congress since 1996 has always intended quarterly fee changes to apply in pending cases, whether that happens to be an increase in fees or a decrease in fees as recently occurred. How do you factor in, I'm sorry, Judge Brasher, you want to go ahead? Nope, go ahead. How do you factor in the general presumption against retroactivity? It's fully factored in here because the application, the Supreme Court couldn't have been clearer in Landgraf that the mere fact that a law is being applied to a case that is based on pre-act conduct doesn't mean that it's a retroactive application. My opposing colleagues litigated this case on the theory that if you apply a statute to a pending case, that means it's retroactive. And that's, I mean, Landgraf says that is wrong. The test for retroactivity is whether you're imposing new legal consequences on conduct that occurred prior to enactment. And here, the legal consequence that bears, the legal consequence that's changing is you pay increased fees if you have a pending case in 2018 and thereafter, and the amount of the fee you have to pay is based on the disbursements. So if, you know, if my opposing colleague is able to prior to January, if he had been able to do so before January 1, 2018, he wouldn't have incurred any fees at all. It's just like in the Martin v. Haydick's case, again, in the Supreme Court, where the court said that when Congress imposed a cap on attorney's fees under the Prison Litigation Reform Act, and without expressly stating what, you know, how that would apply to pending cases, the Supreme Court said, well, this applies to pending cases beginning on the date of the enactment of the act for work billed by attorneys after the act. And it's not relevant that the attorney maybe wouldn't have filed the case if he knew that his attorney's fees weren't going to be covered at the prior rate. And it doesn't matter that the attorney has a fiduciary obligation to continue litigating a case once it's filed. You know, when Congress imposes prospective consequences on prospective conduct, then that's, there's no presumption of retroactivity that would attach to that. What case did you cite just then? I missed it. Martin v. Haydick's, H-A-D-I-X. And on the uniformity issue... Before you leave the retroactive issue, your opponent says that this effective date language is simply irrelevant. Respond to that. I don't know how it can be. I mean, the statute, the unamended statute says a quarterly fee shall be paid in each case for each quarter until the case is closed. And Congress has come in and said, and there's a fee schedule that follows that's, you know, very lengthy. And it's a graduated schedule based on how many, much disbursements there are in a quarter. And then Congress comes in and says, in 2018, here's the new schedule that's going to apply. And we already know that the quarterly fee has to be paid in each case. Your opponent says that Landgraf says the effective date language is irrelevant. That was news to me. And I didn't remember seeing that argument, but... The question in Landgraf was whether certain remedies could be imposed against an employer for engaging in employment discrimination for conduct that occurred long before the law was enacted. And so it was a question of, can you impose new legal penalties on someone for doing something wrong in the past? It's more like an ex post facto inquiry if we were on the criminal side, right? And so the court said the fact that the effective date provision was there didn't matter because what Congress was doing there would be retroactive. It would be changing the legal consequences of past conduct. It would be imposing a penalty for something you did in the past, as opposed to changing fees going forward, as in Martin versus Haydex, or in this case. On the uniformity side, there are various grounds that the case can be resolved on with the court's indulgence. I'd like to just tick through them very, very quickly. At the outset, the fee amendment is not subject to any constitutional requirement of uniformity at all. There are lots of variations in bankruptcy administration and procedure from district to district, including whether district courts want to have bankruptcy courts at all. But the only time the Supreme Court has ever struck down anything as non-uniform was when Congress enacted a law that reallocated substantively the bankruptcy estate of a single debtor. But even if there's a uniformity requirement applicable here, any such requirement is satisfied because Congress has at all relevant times intended and prescribed that equal fees be collected nationwide. And finally, as both the Fourth and Fifth Circuits have held, even if Congress had somehow permitted different fees across the two systems, that would still be constitutional for the reason that Judge Anderson asked about, which is it's enough that the same fee schedule applies uniformly to all debtors within each program. The Supreme Court in Givens that are holding today does not impair Congress's ability under the bankruptcy clause to define classes of debtors. Let me ask you to address that second, the second issue about how these really aren't disuniform fees. I mean, is it your position there that the judiciary just kind of screwed up and should have imposed these fees on pending cases and just messed up and didn't do that? I mean, is that kind of what you're saying? I mean, in a sense, I mean, the Judicial Conference actually acted inconsistent with its own prior order from 2001. In 2001, the Judicial Conference said, we are hereafter applying quarterly fees at the same rate set forth in 1938 as that rate may be amended from time to time. And in 2018, it's not clear why they didn't queue to their own 2001 directive. And yes, our reading of the statute is that when it was enacted, everyone agreed that they wanted equal fees to be charged across the two programs because the Judicial Conference wanted to what was the problem was that Congress hadn't given its permission for fees to be charged. So the Judicial Conference sent its draft, you know, its legislative proposal to Congress and Congress enacted it into law, making one change, which was the Judicial Conference had sought authority to charge, quote, comparable fees. And Congress said, no, no, equal fees. The fees have to be equal to those under a six. And so although, you know, Mike, my cousin colleague is quite right that the word may usually is, you know, correlates with granting a permission rather than mandatory. I mean, that is not itself dispositive. You have to look to the statutory history and context and the surrounding context in the text, like the use of the words equal to the Cortez-Birdchips case from the Supreme Court from 2000, I think is particularly instructive on this, where the Supreme Court refused to just treat the difference between may and shall as dispositive and went on to consider numerous factors. And if you open up Black's Law Dictionary to the word may, it says right there in a note, dozens of court cases have held over the years that the term may, when, you know, there's surrounding context to suggest it, that it should be read to, you know, not as granting permission, but as requiring something. And I think that makes sense here, because everyone wanted to solve any conceivable uniformity problem. The Judicial Conference wanted to keep the bankruptcy administrator program going, and it wanted to charge fees. In 2001, it said, we will forevermore charge equal fees. And so the momentary, you know, I recognize that there was a significant disconnect in the implementation in 2018, but we don't think that you can lay that problem at Congress's feet. It's an issue of statutory implementation. And these particular debtors, it just so happens they had the statute correctly applied to them. And they're here essentially complaining that someone else got an unfair break. And, you know, I also want to emphasize to the court that even if you thought there had been a constitutional violation here, as opposed to the statutory problem, the remedy would not be to give them a refund of their fees. It would be just to award them declaratory relief, because the remedial question turns on congressional intent and furthering the underlying purposes of the statutory scheme, as the Supreme Court set out at the very end of the Morales-Santana opinion. And here, congressional intent is clear. It wanted to address the funding shortfall in the bankruptcy system so that, you know, the bankruptcy system is funded by users of the system rather than by taxpayers. And so it would be... But that remedy argument can't be right if your colleague is correct in his assertions about constitutionality, right? If he's right, if he's right that there are constitutional problems, both due process and uniformity, right? You can't limit the remedy to those violations artificially to declaratory relief. If the harm that has come is monetary, right? That's not quite right. I agree with you on the retroactivity issue, that if this court were to hold that the statute was unconstitutional or impermissibly, you know, retroactive, then the remedy would be you don't have to pay fees for that relevant period. But on the uniformity claim, the Morales-Santana says the Constitution is silent on how you redress an inequality or disuniformity. You have to look to how strongly Congress adheres to what's called the residual rule. Like what is the general rule and what's the exception? And then you figure out based on, you know, would it frustrate the purposes of the statutory scheme or further them to give everybody the benefit of the exception or instead to eliminate the exception and make everybody follow the general rule? And in Morales-Santana, the Supreme Court said, although Mr. Morales-Santana was entirely right that he was the victim of, you know, disuniform unequal treatment, he wasn't entitled to the remedy he wanted because it was clear that Congress would want is to get rid of the special benefit that went to someone else under the statute. And so to here, I recognize that this court may not be able to order other parties not before the court to pay higher fees. You know, the people who got an undeserved break, maybe you can't order them to pay higher fees, but you can't give these debtors a break and, you know, turn the screws on the U.S. trustee program in Congress by allowing them to pay the, you know, not pay the fees that Congress intended just because you can't sort of level up everybody else. It's that the most that this court can do is declare the law and say, you know, assuming that you agree with Mr. Leggett's uniformity arguments that he's right on the law. But, you know, even in Victoria Farms, the Ninth Circuit case that my opposing colleague relies on heavily, the Ninth Circuit there said it would be wholly inappropriate to strike down the fee system of the U.S. trustee program. In that case, where the debtors really did bring a challenge to the coexistence of the two systems, if you look at their brief, they cite all the statutes that set up the two systems, as opposed to the debtors here who only focus on the fee statute. But in any event, what the Ninth Circuit said is the remedy it would call for was for the two programs to be joined and not to provide an exemption from fees for any particular debtor. That would frustrate Congress's purpose of funding the bankruptcy system. Oh, I see your time's up, but I'd like to ask you a question. I gather from what you just said that you do not agree that the debtor here has mounted a challenge to the constitutional challenge to the existence of the two systems. Is that correct? We don't. I mean, we recognize that the debtor has in its most recent brief dropped a footnote in which it's trying to kind of piece together in a mosaic, as it were, different statements as is making the argument. But I think you can just look at the very first thing that he pointed you to, which is document 1228 and the bankruptcy court, which is the motion, which functions as a complaint basically for our purposes here, and just read it. Page seven argues the amendment is unconstitutional. There's no discussion in there about the statutes that set up the bankruptcy administrator system and the U.S. trustee system. We haven't been called upon to, you know, and we haven't briefed because we haven't been called upon to discuss the reasons why Congress could have permissibly, you know, accepted the judicial conference's request to continue the two programs. And so I think your honor was quite right in your question earlier that we take as a premise that the two systems exist. And then the question is, is it okay for Congress to set different fees in different systems if it chooses? And I think the lesson of the Blanchette, the regional rail reorganization cases, is that it's fine for Congress to do that. Let me ask you, can I, there's one more question, just a practical question. When do you think this disuniformity is going to kind of work itself out? So we've got the disuniformity as far as I can see exists because the statute says retroactive application and the judiciary for its subdivisions that it controls said going forward application. At some point they're going to be the same fees. When is that going to be? It's, I mean, we're very hopeful that it has been fixed for all time now. And they're just, I mean, the two programs have the same powers and undertake the same duties. There's really no problem with the, with the program's coexistence. It's sort of like the fact that you have a district court and you have district courts in Florida, you have district courts in Alabama, they coexist. They apply the same substantive law. The one difference that we focused on is the quarterly fee gap. But Congress in the most recent enactment has said the judicial conference shall charge fees equal to those under a six. And so any doubt there had been before, you know, in our view, that was just a clarification of what Congress intended all along. But that has made clear going forward that Congress has mandated equal fees in the two systems. And so if there were any future gap, again, it would be a statutory problem and not a constitutional one because the constitution only requires uniform laws and not that laws be interpreted or implemented uniformly. Otherwise every provision of the bankruptcy code that's ever been a subject of a circuit split would be unconstitutional because courts disuniformly And you may not know the answer to this. I guess I'm just trying to figure out how many, if we were to say, for example, that this is unconstitutional, how much money are we talking about? How many cases are we talking about that applying to eventually it's going to work itself out, but in the interim. I, I, I haven't done the map on that, Your Honor, but my understanding is it would be, if the determination were made that the court's ruling applied, you know, to every debtor in the U.S. trustee district should have the benefit of a refund of fees that they overpaid. We'd be talking about hundreds of millions of dollars. It would gut the U.S. trustee budget. It would put the taxpayer immediately on the hook for substantial amount of money. I mean, it just, it would just, it would be totally contrary to Congress's intent. Is it the largest, the largest, you know, in increasing the quarterly fee structure in the 2017 law, most of the benefit of that fee increase came from already pending cases. And so if Congress had intended the fee increase only to apply to newly filed cases, it would have had to pick an even astronomically higher fee increase. And you can look at the CBO cost estimate on which Congress relied in enacting that statute. The CBO cost estimate says it may even have numbers that says, that says, you know, here's how much of the fee increase will come from pending cases. And here's how much will come from anticipated newly filed cases. So. Okay, Mr. Sandberg, thank you very, very much. Thank you. Okay, Mr. Leggett, you've got your rebuttal. Thank you, your honors. I'd like to first address the 1938 point. First off, this argument was not waived. In fact, the entire point of the motion and then this appeal is to obtain the application of the prior fee amendment to these, to these debtors. And further, these fees, the commencement of the case is the trigger because there are no fees. There are fees owing, quarterly fees owing, even in quarters without disbursements. So disbursements is not the trigger, it's the commencement of the case. So I saw that in the statute. You're right about that. You owe a fee for a quarter, even if there's no disbursement. Were those fees that like low end fee that you owe with regardless of disbursement, was that raised as well by the new statute? No, the new statute raised the maximum fee substantially by 833%. And that's where we're getting our 833%. And I thought that was right. So the fee that you owe, regardless, just upon the filing of the case was not affected at all by the new statute, right? No, it was not changed by the new statute. But our liability was fixed as of the commencement of the case under that fee structure in place at that time. The next point I'd like to address is that the U.S. Trustee's Office has argued that the presumption is that the changes to Chapter 12 apply to pending cases. But that's the inverse. If that were the case that it automatically applies to pending cases, then Congress would not have said that it does not apply to cases post confirmation. That language that it does, that those changes do not apply in certain cases would have been superfluous. Your Honor's turning to the next point. This change to the amendment is not procedural. This resulted in roughly $310,000 extra that these estates have had to pay and that these creditors have had to suffer. This is a substantial economic consequence. This is not procedural. And respectfully, the U.S. Trustees and Council's comments about the amounts that would be, that are due to pending cases versus not, that is simply not in the record. There's literally nothing in the record that supports those numbers. As for the uniformity point, the plan check case, in that case, Congress defined a region for this insolvency statute to that region. There was no non-uniformity because there were no debtors outside of that region. The CBO, I apologize for jumping around, Your Honors. Congress, the House report says that the CBO estimates were not available at the time of passage of this amendment. And Your Honors, I see my time's running short, but um... I ask you to address one additional question, which this, and this is just a thing that I might be hung up on, just might be me, but it just seems to me that the, what's happened here is the judiciary messed up in the application of this statute and should have applied these fees retroactively in the districts that the judiciary is in charge of. If that is the case, just assume that is the case, how is that a problem that we run into all the time where, you know, a judge interprets a statute one way in one place and another judge interprets it in a different way in a different place? And, you know, maybe they're both wrong, but it's sort of a judicial problem in the application and interpretation of the statute and not a Congress problem in passing the statute. Assume that I'm, what do you say about that? Your Honors, first we would challenge that this, I mean, this amendment gave discretion to the increase. This, and the end result is that as applied, this amendment is non-uniform as between U.S. trustee districts and bankruptcy administrator districts because debtors in U.S. trustee districts have had to pay up to 833 percent more. This is a material difference, Your Honor, and the non-uniformity is underscored by the fact that a portion of the increased fees in U.S. trustee districts go towards non-U.S. trustee budget items and, in fact, go towards budget items that are outside of U.S. trustee districts. Even assuming, making that assumption that judicial conference was erring, this, the amendment promulgated by Congress still provides for non-uniformity with respect to the use of the fees. And, again, we challenge the notion that Congress would express discretion to apply to increase the fees or not. Okay, thank you very much to both of you. We appreciate the help.